# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MORINI, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 10-1739 |
| | ) | |
| CASTLE CHEESE, INC., and | ) | |
| GEORGE MYRTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CONTI, District Judge.

## I.    INTRODUCTION

Pending before the court is the motion for summary judgment (ECF No. 63) filed by

Castle Cheese, Inc., ("Castle") and George Myrter ("Myrter," and together with Castle,

"defendants") seeking judgment as a matter of law pursuant to Federal Rule of Civil Procedure

56 with respect to claims of breach of contract and fraud in the inducement as asserted by

Christopher Morini, Sr., ("plaintiff" or "Morini") under counts I and III of his second amended

complaint.[1]  (ECF No. 26).  This court's exercise of subject-matter jurisdiction over plaintiff's

claims is predicated upon the applicability of 28 U.S.C. § 1332 (diversity of citizenship).  For the

following reasons, defendants' motion for summary judgment will be GRANTED.

---

[1]    In his January 8, 2013 brief in opposition to defendant's motion for summary judgment, plaintiff indicates in a footnote that he voluntarily withdraws his claims under counts V – VII of his second amended complaint.  (ECF No. 76 at 2 n.2).  In light of plaintiff's decision not to contest defendants' motion for summary judgment as to these counts, the court will find that those claims are dismissed with prejudice.  The only claims remaining are those set forth in counts I and III of the second amended complaint.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Resolution of the present case hinges upon the circumstances attendant to the hiring and termination of plaintiff by Myrter, owner of Castle.  Plaintiff began an employment relationship with Castle on or about March 1, 2009.  (ECF No. 82 at 7 – 8).   His employment ceased a little over three months later, in June 2009.  (ECF No. 82 at 1).  Prior to his time with Castle, plaintiff was employed by an imitation cheese and cheese-substitute manufacturing and distributing corporation based in Orlando, Florida, and conducting business as Galaxy Cheese Company ("Galaxy").  (ECF No. 82 at 1).  Galaxy was founded by plaintiff's brother, Angelo Morini ("Angelo").  (ECF Nos. 65-1 at 6; 82 at 12).  Plaintiff was hired by Angelo in 1981, and continued to work there after Angelo's eventual departure from the company around 2003.  (ECF Nos. 65-1 at 6; 65-2 at 4; 82 at 1 – 2).  Just prior to plaintiff's separation from Galaxy, he had been earning $155,000.00 per year, in addition to receiving a bonus of up to forty percent of his annual salary, stock options, an automobile, medical and retirement benefits, business expenses, vacation time, and country club fees.  (ECF No. 65-2, at 10 – 11, 61 – 62).  Plaintiff's contract with Galaxy stated that he was employed "for an indefinite term."  (ECF Nos. 65-1, at 62; 65-2, at 12).  The employment contract with Galaxy also stated that if plaintiff was "terminated without cause," he was entitled to receive five years of severance pay, at $155,000.00 per year, five years of country club dues, and a five-year car allowance.  (ECF No. 65-2, at 62).  As a condition of his employment with Galaxy, plaintiff had signed a non-compete agreement of two years' duration.  (ECF No. 62-2, at 57 – 60).

Around late 2006 to early 2007, plaintiff began to consider leaving the employment of Galaxy because of what he characterized as a disagreement with management over the direction of the company and unreasonable sales targets.  (ECF Nos. 65-1 at 40 – 41; 65-2 at 15; 82 at 2 –

3)  Plaintiff's dissatisfaction peaked following the failure of Galaxy's management to procure adequate supplies of casein - an ingredient vital to the production of cheese at Galaxy.  (ECF No. 65-1 at 38, 40).  In an attempt to acquire necessary supplies of casein, plaintiff contacted Myrter at Castle for the purpose of purchasing any available casein.  Myrter had been a former co-worker at Galaxy.  (ECF Nos. 78-4, at 76; 82, at 12 – 14).  Myrter was terminated from employment at Galaxy by plaintiff's brother, Angelo, over twenty years ago.  (ECF Nos. 78-4, at 76 – 77; 82, at 12 – 14).

Following plaintiff's initial contact with Myrter for the purpose of purchasing casein, the two parties began discussing the potential for plaintiff to work for Castle.  (ECF Nos. 65-1, at 24, 38 – 39; 78-4 at 4 – 5, 18 – 22, 56, 60 – 61, 76; 82 at 4 – 5).  As a result of the discussions, plaintiff was eventually extended an offer of employment, with an annual salary of $155,000.00, in addition to a commission on sales of product and benefits.  (ECF Nos. 65-1, at 42; 78-4, at 31 – 32).  Plaintiff declined to accept the salary component, instead informing Myrter that he would do the job for $125,000.00.  (ECF Nos. 65-1, at 42; 78-4, at 31 – 32).  The parties agreed to this arrangement.  In an effort to hasten the commencement of his future employment with Castle, plaintiff – through counsel – engaged in negotiations with Galaxy to shorten the duration of the two-year non-compete agreement and obtain separation benefits.  (ECF Nos. 65-1, at 37, 39 – 41; 65-2, at 19, 63 – 65, 66).

As a result of these efforts, the non-compete term was reduced to twenty-one months in length.  (ECF No. 65-2, at 69).  Galaxy agreed to pay $311,523.08 over a period of approximately fifteen months.  (ECF No. 65-2, at 19, 66).  Plaintiff would also receive payments for health benefits from Galaxy for up to twenty-one months, in the amount paid by Galaxy to

cover plaintiff during his term of employment or until he gained coverage through employment elsewhere, whichever occurred first. (ECF No. 65-2, at 66).

During his time with Galaxy, and through the present date, plaintiff has resided in Windermere, Florida. (ECF No. 65-1 at 4). Also during the relevant period, plaintiff developed a relationship with "Rissi-Keyes," a cheese brokerage from whom he received a commission on sales related to an account acquired by plaintiff, and plaintiff established his own company, "Morini Brands," largely for the purpose of developing, marketing, and distributing a meat-substitute product known as the "Bahama Rice Burger." (ECF Nos. 65-1 at 4, 7 – 9, 11 – 12, 28 – 29; 78-4 at 13; 82 at 3 – 4).

Plaintiff last worked for Galaxy in June 2007. (ECF No. 65-1, at 8). Plaintiff began to work for Castle on or about March 1, 2009. (ECF Nos. 82, at 7 – 8). Just prior to this date, plaintiff signed two documents on February 15, 2009: "Employee Confidentiality and Non-Compete Agreement," and "Employee Handbook Acknowledgement." (ECF Nos. 65-3; 65-4; 82, at 6 – 7). In the non-compete agreement plaintiff agreed to abide by a covenant not to compete for five years following potential termination from Castle, and that plaintiff's employment "may be terminated by the Company for a reason or without cause," because plaintiff's "employment by the Company is 'at will.'" (ECF No 65-3, at 2).[2] The agreement further provided:

> This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and shall be construed in accordance therewith. The parties hereto agree that any legal action brought by either party shall be filed in the Court of Common Pleas of Lawrence County, Pennsylvania, and that that Court has personal jurisdiction of the parties and that venue is [sic] in that court is proper.

(ECF No. 65-3 at 6). The Employee Handbook Acknowledgement included the following terms:

---

[2] Defendants in their reply waived and abandoned any right to enforce the non-compete agreement. (ECF No. 81 at 22 n.9).

> Unless expressly proscribed by statute or contract, my employment is "at will." I understand that I have the right to terminate my employment at any time, with or without cause or notice, and that the Company has the same right. I further understand that my status as an "at will" employee may not be changed except in writing and signed by the President of the Company.

(ECF No. 65-4). Neither document made mention of a proposed duration for plaintiff's employment. (ECF No. 65-2, at 23 – 24).

In June 2009, plaintiff received a call from Myrter informing him that his employment at Castle was being terminated. (ECF Nos. 65-1, at 12 – 14; 78-4, at 23). Plaintiff did not transact any sales during his period of employment. (ECF Nos. 65-1, at 14, 26 – 29; 78-4, at 8 – 12, 23, 49; 82, at 7 – 8). This lack of sales was the reason cited by Myrter for plaintiff's termination. (ECF Nos. 65-1, at 14; 78-4, at 3, 5, 14 – 16, 23, 49, 51; 82, at 7 – 8). On December 23, 2010, plaintiff filed a complaint with this court against Castle and Myrter as a result of his termination. (ECF No. 1). A second amended complaint – currently at issue – was filed on August 18, 2011. (ECF No. 26). Subsequent to the filing of a motion by defendants on September 2, 2011, counts II and IV of plaintiff's second amended complaint were dismissed, and counts I, III, and V – VII remained. (ECF Nos. 28 – 30, Minute Entry on October 26, 2011). Following a period of discovery ending in August 2012, defendants filed an amended answer and counterclaim on September 26, 2012. (ECF No. 62). On October 1, 2012, defendants also filed a motion for summary judgment with respect to all remaining claims advanced by plaintiff in his second amended complaint. (ECF No. 63). Plaintiff's response was filed on January 8, 2013. (ECF No. 76). The motion has been fully briefed, and is ripe for disposition. (ECF Nos. 64, 76, 81).

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides in relevant part:

### (a.) Motion for Summary Judgment or Partial Summary Judgment.

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

…

**(c) Procedures.**

> **(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Marten v. Godwin*, 499 F. 3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 – 23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); s*ee Doe v. Abington Friends Sch.*, 480 F. 3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing

*Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322 – 23).  The United States Supreme

Court emphasized:

> "[W]hen the moving party has carried its burden under Rule 56(c), its
> opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts . . . . Where the record taken as a whole could
> not lead a rational trier of fact to find for the nonmoving party, there is no
> 'genuine issue for trial.'"

*Scott v. Harris*, 550 U.S. 372, 380  (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 – 87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most

favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  *Doe*, 242 F. 3d at 446; *Woodside Sch. Dist. of Philadelphia Bd.

of Educ.*, 248 F. 3d 129, 130 (3d Cir. 2001); *Heller v. Shaw Indus., Inc.*, 167 F. 3d 146, 151 (3d

Cir. 1999).  A court must not engage in credibility determinations at the summary judgment

stage.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F. 3d 639, 643 n.3 (3d Cir. 1998).

## IV.  DISCUSSION

### A.  Count I

In count I of his second amended complaint, plaintiff alleges breach of an implied

contract by defendants as a result of his termination of employment in June 2009 after little more

than three months.  (ECF No. 26 at 8 – 9).  Defendants claim entitlement to judgment as a matter

of law, countering that plaintiff provided no evidence of the contractual memorialization of

anything other than "at-will" employment under Pennsylvania law.  (ECF No. 64, at 9 – 21).

Defendants begin by noting that there is a strong presumption of at-will employment in

Pennsylvania in lieu of an employment contract.  (ECF No. 64, at 9 – 11).  Defendants are

correct.  The United States Court of Appeals for the Third Circuit has found that the Supreme

Court of Pennsylvania has "'steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth.'" *McMullin v. Cranmer* 159 F. App'x 422, 424 (3d Cir. 2005) (quoting *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A. 2d 283, 290 (Pa. 2000)). Relevant exceptions providing for implied contract claims have been allowed where an employee put forth "clear and precise evidence" of the intent to enter an employment contract for a "definite duration," or that the employee provided "sufficient additional consideration" to guarantee a reasonable period of employment. *Edwards v. Geisinger Clinic*, 459 F. App'x 125, 129 (3d Cir. 2012) (citing *Scully v. U.S. WATS, Inc.*, 238 F. 3d 497, 505 (3d Cir. 2001)); *Bravman v. Bassett Furniture Indus., Inc.*, 552 F. 2d 90, 93 (3d Cir. 1977); *Rapagnani v. Judas Co.*, 736 A. 2d 666, 669 (Pa. Super. Ct. 1999) (citing *Luteran v. Loral Fairchild Corp.*, 688 A. 2d 211, 214 (Pa. 1997)). However, the "intention to overcome the presumption will not be unheedingly inferred." *Veno v. Meredith*, 515 A. 2d 571, 578 (Pa. Super. Ct. 1986). "[M]uch clarity is required," and absent a "very clear statement of an intention" to create anything other than at-will employment, no exception will be found. *Id.*

Defendants first argue that plaintiff provided no clear evidence of an agreement for employment of a definite duration. (ECF No. 64, at 11 – 13). The United States Court of Appeals for the Third Circuit has held that an "employee's 'subjective expectation of . . . guaranteed employment . . . based on employer practices or vague employer superlatives' does not demonstrate an employment contract for a definite term." *Edwards*, 459 F. App'x at 129 (quoting *Scully*, 238 F. 3d at 505). Even comments which "evince an employer's *hope* that the employee will remain" are insufficient grounds for implying a contract of a definite term. *Id.* (emphasis in original). In *Edwards*, evidence that a foreign physician was informed in recruitment discussions, and in writing, that he would be allowed up to six years from his first

date of employment to obtain a board certification in the United States to continue employment, and that the employer would sponsor the foreign physician's work visa for at least three years, was inadequate to establish that a definite duration of employment was intended. *Edwards*, 459 F. App'x at 130 – 31.

Similarly, in *Veno*, the employer allegedly informed the claimant that: "[w]e're both the same age, we're both going to retire together, we're not making a lot now, but we'll make it later on. I want you to raise your children here. I want them to go to the school. I want to retire together." *Veno*, 515 A. 2d at 579 – 80. According to the Superior Court of Pennsylvania, this statement was too vague to suggest that a definite period of employment was contemplated by the employer; it was only "aspirational." *Id.* The court held that "[t]he law does not attach binding significance to comments which merely evince an employer's *hope* that the employee will remain in his employ until retirement." *Id.* (emphasis in original).

As with the above cases, even when viewed in the light most favorable to him as the non-moving party, the facts enunciated by plaintiff suggest that only broad, generalized hopes and aspirations were expressed by Myrter with respect to any sort of employment period for plaintiff. Plaintiff claims that Myrter promised him at least ten years of employment with Castle. (ECF No. 76, at 21). Plaintiff's deposition testimony does not support a showing that there was a definitive term of employment agreed to by Myrter. In response to questioning regarding what he perceived Myrter's intentions to be with respect to the duration of his employment, plaintiff recounted that "he wanted to build his company to 100 million and he wanted to build it in retail and he thought that I could take him there and he liked that idea. He wanted to go at this for like ten years." (ECF No. 65-1, at 39). Plaintiff testified that Myrter informed him "as long as [Myrter] wanted to build a company and didn't sell it out, that I would be employed there

building his company." (ECF No. 65-2, at 24). Plaintiff claimed that "[Myrter] also wanted me to be in a position to, eventually, run the company. (ECF No. 65-1, at 24).

Yet, as defendants noted, plaintiff also admitted that none of these discussions were put into writing. (ECF Nos. 65-1, at 24; 65-2, at 23). No particulars were discussed regarding a specific duration for plaintiff's employment. (ECF No. 65-2, at 24). Plaintiff said: "We talked about how long it would take to build a new retail division and that." (Id.) "[Myrter] had spoken many times with me, with his wife about wanting to be in the game maybe for ten years, maybe turning it over to his children, maybe having me there with his children." (Id.) This testimony, however, does not demonstrates an intent to employ him for a clearly defined period, even when viewed in the light most favorable to him.

Based upon plaintiff's assertions, Myrter and he obviously spoke about desires and possibilities, but by plaintiff's own admission, nothing concrete was discussed – let alone memorialized. *See Marshall v. Dunwoody Village*, 782 F. Supp. 1034, 1041 (E.D. Pa. 1992) (employer's request that claimant make a long-term commitment to a marketing plan which would take three or four years to implement was not sufficiently definite); *Marsh v. Boyle*, 530 A. 2d 491, 494 (Pa. Super. Ct. 1987) (employer's assurance that claimant would be working "for at least two years" was not sufficiently definite); *Scott v. Extracorporeal, Inc.*, 545 A. 2d 334, 340 (Pa. Super. Ct. 1988) (employer's promise of "permanent" employment was not sufficiently definite). Plaintiff's proffered evidence is inadequate to constitute clear and precise evidence of an intention to create a definite duration of employment.

According to defendants, plaintiff also failed to provide sufficient evidence of additional consideration which could imply a contractual relationship for a reasonable period of employment. (ECF No. 64, at 13 – 19). Plaintiff's position is that by foregoing the full panoply

of benefits available to him under the terms of his severance agreement with Galaxy in exchange for a shortened non-compete period, taking a salary cut, and signing a five-year non-compete agreement with Castle, he provided additional consideration entitling him to a reasonable period of employment.  (ECF No. 76,  at 14 – 21).

In Pennsylvania, the presumption of at-will employment may be overcome by additional consideration when evidence demonstrates a plaintiff has assumed a "legally sufficient detriment for the benefit of the employer beyond the services for which he was hired."  *McGuire v. Palmerton Hosp.*, Civil Action No. 3:12-CV-1762, 2012 WL 5494924, at *4 (M.D. Pa. Nov. 2012) (citing *Ruzicki v. Catholic Cemeteries Ass'n of the Diocese of Pittsburgh*, 610 A. 2d 495, 497 (Pa. Super. Ct. 1992)).  Additional consideration, however, does not include hardships "commensurate with those incurred by all manner of salaried professionals" when pursuing new employment opportunities.  *Veno*, 515 A. 2d at 580.

In the present case, the record demonstrates that at no time did plaintiff need to move his place of residence to perform his duties with Castle.  *Cf. Ciardi v. Laurel Media, Inc.*, Civ. No. 11-219E, 2012 WL 70656, at *6 – 7 (W.D. Pa. Jan. 2012) (a claimant's resignation from former employment and move from Florida to Pennsylvania without the assistance of her new employer was sufficient consideration for an implied contract).  It is not disputed by plaintiff that travel expenses attendant to his business duties were covered by Castle.  *See Quint v. Thar Process, Inc.*, Civil Action No. 11-116, 2011 WL 4345925, at *9 (W.D. Pa. Sept. 2011) (no finding of additional consideration when commuting costs were assumed by the employer).  While plaintiff's position at Castle paid a lower salary than he received at Galaxy, he entered into the employment relationship knowing of the loss of potential income - openly testifying that he rejected a higher salary offer – by Myrter – commensurate with his earnings at Galaxy to work

for Castle. *See Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 940 (3d Cir. 2003) (quoting *Darlington v. General Electric*, 504 A. 2d 306, 315 (1986), *overruled on other grounds*, *Clay v. Advanced Computer App. Inc.*, 559 A.2d 917 (1989)). ("Leaving one job to take another one has been held to be 'simply a reasoned choice of a new career goal' rather than additional consideration").

When viewed in the light most favorable to plaintiff, it does appear that he suffered a significant financial loss when he left Galaxy – regardless whether it was a termination, resignation, or something in between. (ECF No. 65-1, at 40 – 41). Over $800,000.00 worth of benefits were outlined within an "Employment Contract and Severance Agreement" between plaintiff and Galaxy. (ECF No. 65-2, at 61 – 62). The severance agreement stated:

> In the event that you are terminated without cause by the Company, you will be entitled to receive five (5) years severance pay at your annual base pay of $155,000, five years of country club dues at $250 per month, and five years of a car allowance of $1,100 per month. Such payments are to be made in monthly installments

(ECF No. 65-2, at 62). Plaintiff's counsel at the time of his employment with Galaxy responded to an offer from Galaxy to terminate plaintiff's employment and "to compromise" the terms of the severance settlement. (*Id*. at 63.) Plaintiff abandoned his salary and benefits with Galaxy to enter an employment relationship with Castle. Plaintiff negotiated a reduced severance payment and reduced the duration for his non-compete agreement, but he provided the court with no evidence that this was necessary to attain his position with Castle. There was no indication that the passage of three months under the original non-compete agreement would have precluded him from employment with Castle. There was no evidence that Myrter requested plaintiff to shorten the length of his non-compete agreement. Even viewed in the light most favorable to plaintiff as the nonmoving party, there is no indication that shortening the duration of the non-

compete agreement with Galaxy by three months actually conferred *any* benefit to defendants, or that plaintiff was *required* to bear the substantial reduction in severance benefits in order to assume employment with Castle. *See Watson v. Vulcraft Sales Corp.*, No. 2:12-cv-00628, 2012 WL 2572056, at *4 (W.D. Pa. Jul. 2012) (citing *Dugan v. Bell Tel. of Pennsylvania*, 876 F. Supp. 713, 726 (W.D. Pa. 1994)) (requiring claimant to demonstrate the conferral of a benefit, other than services he or she was hired to perform, or the undertaking of a substantial hardship, other than the performance of services for which he or she was hired). Under those circumstances, the negotiated non-compete agreement and altered severance package with Galaxy were not sufficient additional consideration.

Lastly, with respect to the non-compete agreement imposed by his employment with Castle, the court notes that plaintiff put forward no evidence indicating that the non-compete agreement was not discussed prior to its signing in February 2009. Plaintiff did not testify that he was surprised by, or objected to, the signing of the non-compete agreement. There is nothing to suggest that Castle's non-compete agreement – its enforceability notwithstanding – was foisted upon plaintiff as an "unsuspecting employee." (ECF No. 76, at 20). *Shriver v. Cichelli*, Civ. A. No. 92-0094, 1992 WL 350226, at *4 – 5 (E.D. Pa. Nov. 1992). The record shows that plaintiff affixed his signature to Castle's non-compete agreement on February 15, 2009 – prior to his start date in March 2009. (ECF No. 65-3, at 6). He was not yet an employee at the time of signing. Under those circumstances, the non-compete agreement is not additional consideration. *Id.* Plaintiff attempts to argue that he was an unsuspecting employee because the non-compete agreement was brought to him for signing twenty-one months after he left employment with Galaxy, and had "began performing on the agreement between the parties." (ECF No. 76, at 20). Once again, there is no evidence produced by plaintiff to suggest that he was unaware that he

would have to sign such an agreement, or that he objected to it. Viewing the facts in the light most favorable to plaintiff, the court has no basis to conclude that plaintiff was an "unsuspecting employee."

Considering the evidence adduced and drawing all reasonable inferences in favor of plaintiff, the nonmoving party, the court must conclude no reasonable jury could render a verdict in favor of plaintiff on the breach of contract claim and summary judgment must be granted in favor of defendants on that claim.

### B. Count III

Having determined that there was insufficient evidence adduced to suggest either an express or implied employment contract was formed between plaintiff and defendants for anything other than at-will employment, the court moves to plaintiff's claim under count III of his second amended complaint. Count III is a claim for fraud in the inducement.

Under the law of Pennsylvania, a claim for fraud in the inducement requires a showing of six elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Freeman v. Pittsburgh Glass Works, LLC*, 709 F. 3d 240, 256 – 57 (3d Cir. 2013) (quoting *EBC, Inc. v. Clark Bldg. Sys.*, 618 F. 3d 253, 275 (3d Cir. 2010)). Pennsylvania law further demands proof of each element by "clear and convincing evidence." *Id.*

Plaintiff alleges in count III that defendants committed fraud when he was "induced to resign his employment with his then employer" in exchange for the promise of

> an employment contract which would . . . provide for a salary of $125,000 per year, together with certain benefits of employment, as well as a promise of

> employment for an indefinite, but substantial period of time . . . [and] financial
> and other support to the Plaintiff's Food Service business . . . .

(ECF No. 26, at 11). Defendants allegedly forced the unwitting plaintiff into signing an at-will employment agreement, having never intended to supply an employment contract with the above terms. (ECF No. 26, at 11 – 12). No specific evidence was adduced to substantiate plaintiff's allegations that Myrter either intentionally or recklessly made false representations with the intent that plaintiff would rely upon the misrepresentations – to his detriment – prior to the close of discovery and the filing of the motion for summary judgment.

In his brief in opposition to defendants' motion for summary judgment, plaintiff newly alleges that he had been lured from his former employment under the guise of building Castle's retail presence, only to be thrust into an industrial cheese sales position for which he had little expertise. (ECF No. 76, at 9 – 14). This change was all allegedly done as a result of a desire by Myrter to exact revenge upon plaintiff for Myrter's termination at Galaxy at the behest of plaintiff's brother, Angelo, many years before. (ECF No. 76, at 9 – 14). As his source for the above factual allegations, plaintiff attached to his brief in opposition to defendants' motion for summary judgment (ECF No. 76), three new affidavits: the Affidavit of Christopher Morini, Sr. (ECF No. 78-1), dated January 7, 2013; the Affidavit of Angelo Morini (ECF No. 78-2), dated January 5, 2013; and, the Affidavit of Susan Morini (ECF No. 78-3), dated January 7, 2013. Defendant seeks judgment as a matter of law with respect to count III on a number of bases.

Defendants first strongly object to plaintiff's alleged attempt to meet the above requirements, essentially repleading his claim in his brief in opposition by arguing that Myrter intentionally lured plaintiff into leaving Galaxy under the pretense of long-term future employment, only to terminate plaintiff after less than four months as vengeance for Angelo's past conduct. (ECF No. 81, at 1 – 2). Defendants argue that the new affidavits introduced by

plaintiff in support of these latest allegations should be excluded by the court because they were obtained after the close of discovery, and are inadmissible under the Federal Rules of Evidence and according to the established doctrine of "sham affidavits." (ECF No. 81, at 3 – 12).

The court first notes that "new" facts cited in opposition to a motion for summary judgment do not – alone – warrant court action when no new claim or legal theory is created by its introduction, and instead "directly relate to and support the initial" claim. *Romdhani v. Exxon Mobil Corp.*, Civil Action No. 07-715, 2010 WL 4682414 at *4 – 5 (D. Del. Nov. 2010).[3] "Plaintiffs are held only to the notice pleading standard and are not required to plead every factual allegation supporting their claims." *Id.* at 5 (citing FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That having been said, the "new" evidence must be properly before the court. *Krouse v. American Sterilizer Co.*, 984 F. Supp. 891, 913 – 15 (W.D. Pa. 1996). In the present case, the aforementioned affidavits for the most part do not contain admissible evidence.

The rules governing the use of affidavits in the summary judgment context are strict. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F. 3d 700, 718 – 19 (3d Cir. 2004). Rule 56(c) of the Federal Rules of Civil Procedure states that affidavits must "set out facts that would be admissible in evidence." *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F. 3d 254, 262 (3d Cir. 2012). Defendants assert that the affidavits of Angelo and Susan Morini are irrelevant, and should be stricken. (ECF No. 81, at 4 – 6). In his affidavit, Angelo purported to have terminated Myrter from employment with Galaxy sometime in the late 1980s, and that Myrter was "very angry," and threatened to "get even with me." (ECF No. 78-2, at 1 – 2). He went on to suggest that Myrter was a "vengeful person" disposed to telling "untruths." (ECF No. 78-2, at 1 – 2).

---

[3] Whether the affidavits should be stricken under Rule 37 of the Federal Rules of Evidence for plaintiff's failure to comply with the disclosure requirements of Federal Rule of Evidence 26 was not raised.

It is plaintiff's belief that this constitutes evidence of Myrter's intention to harm plaintiff by fraudulently inducing him to leave Galaxy. However, the connection is so questionable – even viewed in the light most favorable to plaintiff – that the statements cannot be considered. Rule 404(a)(1) of the Federal Rules of Evidence states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Myrter's statement to Angelo can hardly be considered evidence of an intent to harm plaintiff. If anything, it illustrates an intention to exact some sort of revenge on Angelo. The connection between this statement and Myrter's alleged intention to defraud plaintiff over two decades later is tenuous, at best. There is little to no probative value in such a statement. It is certainly not "clear and convincing evidence" of any element of fraud in the inducement. Angelo's belief about Myrter's vengefulness and dishonesty is a good example of evidence excluded under Rule 404(a)(1). His belief does not point to a specific intent, motive, or desire to defraud plaintiff.

Susan Morini's affidavit has even less probative value. Susan recounts an alleged incident in 2005 wherein her son, her son-in-law and she were hired by Myrter to work for Castle, and that Myrter withdrew his offer at the last minute. (ECF No. 78-3, at 1 – 2). She claimed that Myrter had informed her that he "did not care for" Angelo. (ECF No. 78-3). As with the introduction of Angelo's affidavit, Susan's affidavit does nothing more than attempt to demonstrate that Myrter's alleged fraud in the inducement of plaintiff to join Castle was conduct in conformity with similar past acts. This kind of evidence is inadmissible under Rule 404(a)(1) of the Federal Rules of Evidence.

Turning to plaintiff's personal affidavit, defendants assert that it should be stricken as a "sham affidavit." (ECF No. 81, at 7 – 12). "A sham affidavit is a contradictory affidavit that

indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All American Rathskellar, Inc.*, 503 F. 3d 247, 253 (3d Cir. 2007). Such an affidavit does not provide the basis for finding a genuine issue of material fact because it is "merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it." *Id.* Deposition testimony is considered to be inherently more reliable in light of the adversarial nature of the deposition, including the opportunity for cross-examination. *Id.* (citing *Russell v. Acme-Evans Co.*, 51 F. 3d 64, 67 – 68 (7th Cir. 1995) ("We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit.")).

In Jiminez, the Court of Appeals for the Third Circuit recognized that other courts of appeals have "adopted a particularly robust version of the sham affidavit doctrine, holding that, whenever a subsequent affidavit contradicts prior deposition testimony, it should be disregarded." Id. at 254. The Court of Appeals for the Third Circuit has "adopted a more flexible approach." Id. The court recognized in Jiminez that "not all contradictory affidavits are necessarily shams." Id. Notably, "'[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." Id. (quoting Baer v. Chase, 392 F.3d 609, 625 (3d Cir. 2004)). "Such corroborating evidence may establish that the affiant was 'understandably' mistaken, confused, or not in possession of all the facts during the previous deposition," and the affiant should have the opportunity to provide a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. Id.; see Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988) ("When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant information at the time, and provided no satisfactory explanation for the later contradiction, the

courts of appeals are in agreement that the subsequent affidavit does not create a *genuine* issue of material fact.").

When deposition testimony is ambiguous or incomplete, subsequent affidavits may be provided to clarify the testimony and will not be discarded as sham documents. See Lytle v. Capital Area Intermediate Unit, No.1:05-CV-0133, 2009 WL 82483, at *2 (M.D. Pa. Jan. 9, 2009) ("Situations may arise where an affidavit does not 'raise a new or distinct matter,' but rather explains certain aspects of a deposition testimony that caused confusion." (quoting Baer, 392 F.3d at 625)). To that end, "[d]isregarding statements in an affidavit is appropriate on 'clear and extreme facts' . . . when the affidavit is 'flatly contradictory' to the prior testimony . . . ." Coleman v. Cerski, No. 3:04-cv-1423, 2007 WL 2908266, at *5 (M.D. Pa. Oct. 4, 2007) (quoting Videon Chevrolet, Inc. v. Gen. Motors Corp., 992 F.2d 482, 488 (3d Cir. 1993)). When allegations in a subsequent affidavit could support statements made in prior deposition testimony, the dueling statements "are more appropriately dealt with on cross-examination than on summary judgment." Ragan v. Fuentes, No. 05-2825, 2007 WL 2892948, at *11 (D.N.J. Sept. 28, 2007).

Here, plaintiff points to his deposition and his statement that there were "conditions" on which he would leave his employment with Galaxy. To the extent the affidavit explains those conditions, it is not inherently contradictory to his deposition and arguably the affidavit is not a sham.

Even accepting that plaintiff's personal affidavit is not a "sham," it still does not alter the court's disposition of defendants' motion. Plaintiff offered no new evidence to suggest a definite duration of employment was discussed. He merely reiterated that "Myrter acknowledged on several occasions that it would take five to ten years for me to develop a retail brand." (ECF No.

19

78-1, ¶ 4.)  Plaintiff offered no new evidence of consideration aside from what the court has already discussed, and provided no evidence of the intent or motive requisite for fraud in the inducement.  Statements made years ago that Myrter had been "very disappointed" with his termination at the hands of Angelo Morini, and that Myrter's wife was "very upset" with Angelo are inadmissible under Rules 404(a) of the Federal Rules of Evidence for the same reasons discussed above with respect to Angelo's and Susan's affidavits.  (ECF No. 78-1, at 1 – 6).

As a result of the inadmissibility of the affidavits of Angelo and Susan according to the Federal Rules of Evidence and plaintiff's affidavit offering no admissible evidence that supports his claims, plaintiff's fraud in the inducement claim is without factual support – certainly not the "clear and convincing" support required to establish the necessary elements of plaintiff's claim. As a result, defendants' other arguments need not be reached

## V.    CONCLUSION

Based upon the foregoing, even when viewing the evidence presented in this case and drawing all reasonable inferences therefrom in the light most favorable to plaintiff as the nonmoving party, there is no genuine issue of material fact in dispute with respect to plaintiff's claims set forth in counts I and III of his second amended complaint.  No reasonable jury could render a verdict in favor of plaintiff on his claims for breach of an implied employment contract or fraud in the inducement.  The court will grant defendants' motion for summary judgment with respect to counts I and III in the second amended complaint, and will dismiss with prejudice counts V through VII.  Judgment as a matter of law will be entered in favor of defendants.  An appropriate order follows.

By the court,

*s/ Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge

Dated: September 27, 2013.